Michael H. Rubin
Direct Dial: +1.415.395.8154
michael.rubin@lw.com

505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: +1.415.391.0600  Fax: +1.415.395.8095
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Milan |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |

December 2, 2024

**VIA ECF**

Honorable Edgardo Ramos
United States District Court
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *Sean Willey v. Amplitude, Inc.* Case No. 1:24-cv-07577-ER

Dear Judge Ramos:

We represent Defendant Amplitude, Inc. ("Amplitude") in the above-captioned matter. We write pursuant to Rule 2(A) of Your Honor's Individual Practices to request a pre-motion conference ahead of Amplitude's motion to compel arbitration or, in the alternative, to dismiss Plaintiff Sean Willey's ("Plaintiff's") Class Action Complaint ("Complaint").

This case stems from Plaintiff's alleged use of non-party Oscar Health, Inc.'s ("Oscar's") website. Plaintiff alleges that his information was collected by Amplitude, an analytics service provider allegedly providing services to Oscar, while he used the website. Dkt. 1 ¶¶ 44-48. Even though Oscar's Privacy Policy explicitly discloses that Oscar may disclose information "to enable our Business Associates to perform certain functions for us," Plaintiff nevertheless claims he did not consent to the alleged collection of his information by Amplitude. Plaintiff brings a single claim under Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA").

There are numerous reasons why this case does not belong in this (or any) Court. Chief among them is that this case belongs in arbitration: Oscar's Terms of Service require arbitration of "[a]ny dispute arising from or relating to the subject matter of the[] [Oscar] Terms," including Oscar's website. Under the doctrine of equitable estoppel, Plaintiff is bound to his agreement to arbitrate this dispute about the alleged collection of his information from Oscar's website.

Even if there were no arbitration agreement, the Complaint has fatal jurisdictional and pleading deficiencies that require dismissal. For starters, the Court lacks personal jurisdiction over Amplitude because it is not incorporated, based, or otherwise "at home in" New York and does not have the requisite suit-related contacts to support specific jurisdiction. Plaintiff also has not alleged a harm traceable to Amplitude and thus lacks Article III standing. And Plaintiff fails to plead basic elements of a claim under WESCA.

LATHAM&WATKINS LLP

### A.    This Dispute Should Be Resolved In Arbitration

Plaintiff's claim arises out of his use of Oscar's website and is therefore subject to the mandatory arbitration and class action waiver in Oscar's Terms of Service ("Terms"). "In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). Here, Oscar's Terms include an agreement to arbitrate "[a]ny dispute arising from or relating to the subject matter of these Terms."[1] And the Terms broadly apply to the "use of the [Oscar] Site." That encompasses Plaintiff's claim, which is based on the alleged collection of his information while he used the Oscar website. *See, e.g.*, Dkt. 1 ¶¶ 44-48.

That Amplitude is not a signatory to the arbitration agreement makes no difference. Under the doctrine of equitable estoppel, a plaintiff bound by an arbitration agreement must arbitrate claims against non-signatories where the claims against the non-signatory are "intertwined with the agreement the estopped party [i.e., the plaintiff] has signed." *Denney v. BDO Seidman, L.L.P.*, 412 F.3d 58, 70 (2d Cir. 2005). That doctrine applies if (1) the "claims arise under the subject matter of the underlying agreement, and (2) there is a close relationship between the signatory and the non-signatory party." *In re A2P SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 476 (S.D.N.Y. 2013) (cleaned up). Here, Plaintiff's claim arises from use of the Oscar website (which is governed by Oscar's Terms), and Plaintiff alleges that Amplitude's software operates on Oscar's website.

Because Plaintiff's claim is subject to the arbitration provision in Oscar's Terms, the most efficient approach to resolving this matter is to compel arbitration, which would obviate the need for the Court to address Amplitude's other challenges. By invoking arbitration, Amplitude does not waive, and expressly reserves, its jurisdictional and other defenses (*see infra*, Section B). *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431-32 (2007).

### B.    There Is No Basis For Personal Jurisdiction Over Amplitude

Amplitude is not subject to personal jurisdiction in this case. Amplitude is a Delaware corporation with its principal place of business in San Francisco. Dkt. 1 ¶ 9. It is not "at home" in New York, *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014), and it has no suit-related contacts that would give rise to specific jurisdiction either. Indeed, Plaintiff's jurisdictional theory is based solely on the fact that non-party Oscar is headquartered here. But *Walden v. Fiore* made clear: "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." 571 U.S. 277, 286 (2014). Plaintiff also fails to identify any acts that Amplitude directed at the forum. He suggests that Amplitude "contracted" with Oscar to provide services in New York, Dkt. 1 ¶ 12, but that is not true and Plaintiff fails to plausibly allege any acts that Amplitude directed at the forum. Amplitude is prepared to submit a declaration in support of its personal jurisdiction defense, which the Court may consider on a motion to dismiss. *See Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, 477 F. Supp. 3d 241, 245 (S.D.N.Y. 2020).

---

[1] Terms of Service (Jan. 1, 2020), https://www.hioscar.com/legal/terms/.

LATHAM&WATKINS LLP

### C. Plaintiff Lacks Article III Standing

Plaintiff lacks Article III standing under *TransUnion LLC v. Ramirez*, which requires "an injury in fact that is concrete, particularized, and actual or imminent," and that was likely caused by the defendant. 590 U.S. 413, 423 (2021). To begin with, *TransUnion* requires the existence of a harm with a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 440 (citation omitted). Plaintiff alleges nothing of the sort. Even assuming that Amplitude received information entered into Oscar's website, the information alleged in the Complaint was not linked to Plaintiff personally. *See Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65–66 (W.D. Pa. 2023) (no injury-in-fact where plaintiff did not enter any information "that could connect her browsing activity *to her*"). Moreover, Oscar's Privacy Policy discloses that Oscar shares information with certain third parties to "enable our Business Associates to perform certain functions for us,"[2] which is all Plaintiff alleges.

Similarly, Plaintiff cannot show an alleged harm traceable to Amplitude, *i.e.*, that Amplitude had a "'determinative or coercive effect' on the action that produced the injury." *Carver v. City of New York*, 621 F.3d 221, 226 (2d Cir. 2010) (citation omitted). Amplitude is a data analytics service provider that helps businesses understand their users and products, and that is all Plaintiff alleges occurred here. *See, e.g.*, Dkt. 1 ¶¶ 3-4, 33. Amplitude does not use client data to train AI models or for any other purpose other than helping its clients understand their own data.

### D. The Complaint Fails To State A WESCA Wiretapping Claim

Plaintiff's single count under WESCA fails. Under WESCA, Plaintiff must allege that a "communication was intentionally intercepted through the use of a device." *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, 2007 WL 4394447, at *4 (E.D. Pa. Dec. 13, 2007). Plaintiff fails to do so. Plaintiff alleges no facts suggesting that Amplitude had an "unlawful intent" to violate WESCA. *Kline v. Sec. Guards, Inc.*, 159 F. Supp. 2d 848, 853 (E.D. Pa. 2001). Moreover, the information allegedly intercepted includes non-substantive record information (*e.g.*, his "device ID") and other data automatically generated from use of Oscar's website, not the contents of his communications. In addition, WESCA precludes liability where a plaintiff impliedly consented, and Plaintiff agreed to Oscar's sharing of his information with third parties pursuant to Oscar's Privacy Policy. *See Oliver v. Noom, Inc.*, 2023 WL 8600576, at *7 (W.D. Pa. Aug. 22, 2023) (person may consent under WESCA if they "knew or should have known" that conversation was being recorded).

\*     \*     \*

For these reasons, Amplitude intends to move to compel arbitration or, in the alternative, to dismiss the Complaint. It respectfully requests a pre-motion conference to address this matter. We are available at the Court's convenience.

---

[2] Privacy Policy (June 27, 2022), https://www.hioscar.com/legal/privacy/.

**LATHAM & WATKINS** LLP

Respectfully submitted,

*/s/ Michael H. Rubin*
Michael H. Rubin
of LATHAM & WATKINS LLP

*Counsel for Defendant Amplitude, Inc.*

cc:    All Counsel of Record (via ECF)